## Brookside Distilling Products Corporation v. Monarch Wine Company of Georgia

534

*Walter L. Hill, Jr.*, and *J. Charles Hanahue*, of *O'Malley, Harris, Harris & Warren*, for plaintiff.

*Raymond A. Speiser* and *Leon M. Levy*, for defendant.

HOBAN, P. J., February 7, 1949.—This action was started by a writ of foreign attachment naming the Delaware and Hudson Railroad Corporation as garnishee. By stipulation, the garnishee was released from the attachment and proceedings as to it dissolved, the action continuing between plaintiff and defendant upon the entry of a general appearance by defendant. The complaint avers that on February 6, 1948, defendant offered to sell a carload of blackberry wine to plaintiff and expressly warranted the same to be of a higher or better quality than required by the Pennsylvania Liquor Control Board; that defendant knew plaintiff was a dealer doing business with the Pennsylvania Liquor Control Board; that plaintiff thereupon agreed to buy the wine and thereafter the carload of wine was shipped to plaintiff at Scranton on sight draft, with bill of lading attached; that on arrival in Scranton on February 23, 1948, the sight draft was paid by plaintiff, who took possession of the wine; that, between February 24th and March 20th, plaintiff bottled and shipped, from the wine so received, to the Pennsylvania Liquor Control Board 2,325 cases of such wine; that on March 22, 1948, the Pennsylvania Liquor Control Board notified plaintiff that the wine so delivered to the board was below its prescribed standard and that

it rejected the same; that on the same day plaintiff notified defendant by telephone and telegraph of the rejection of the wine for lack of quality; that on March 28, 1948, plaintiff received from the Liquor Control Board formal written notice of the result of the analysis made by the board of such wine and immediately forwarded a copy of such notice to defendant; that plaintiff requested defendant to take back the wine or refund purchase price to plaintiff. The complaint asked for the return of the purchase price and damages for reimbursement of expenses to which plaintiff had been put in the processing and shipment to the Liquor Control Board and the return to plaintiff of the rejected wine.

Defendant has filed preliminary objections to the complaint, including a motion to strike off the complaint for nonconformity with the Pennsylvania Rules of Civil Procedure and a demurrer.

The motion to strike off the complaint is for lack of conformity to Pa. R. C. P. 1019 (*h*) for failure to state specifically whether the claim is based upon a writing, and, if so, to attach a copy thereof. But we are of the opinion that, having failed to plead in writing and attach a copy thereof, the contract must be held to be an oral one, and while it is obviously the better practice and in conformity with the spirit of the rule to make a specific statement to that effect, it would seem to be a useless procedure to require the complaint to be stricken off for this reason only, especially in view of the fact that at the argument counsel for plaintiff stated that the bargain was concluded by telephone conversation between the respective officers of plaintiff and defendant in Scranton and Georgia. If there is any question about the nature of the bargain, it seems to us that a request for a more specific statement rather than a motion to strike off would be the proper objection. The pleading can mean only that the contract and the warranty were oral undertakings and the objection in the

nature of a motion to strike off the complaint must be overruled.

The demurrer is based on the theory that the facts declared in the complaint show that the buyer, having accepted the goods and exercised acts of ownership over them, failed within a reasonable time to inspect for quality, and having so failed cannot now claim a breach of warranty. Defendant cites the provisions of sections 47, 48 and 49 of The Sales Act of May 19, 1915, P. L. 543, 69 PS §§257, 258, 259. For the purpose of this demurrer the pertinent facts declared in the complaint must be admitted. These are defendant's knowledge of plaintiff's position as a dealer with the Pennsylvania Liquor Control Board, the express warranty of quality higher than required by the board, the receipt of the wine by plaintiff and the subsequent processing and delivery of the wine to the Liquor Control Board, the rejection of the wine by the Liquor Control Board because of defective quality, and timely notification thereof by plaintiff to defendant.

Defendant argues that the lapse of time between February 23, 1948, and March 22, 1948, 28 days, is an unreasonable time for the buyer to take to notify the seller of a breach of an express warranty of quality and that the court ought to so declare as a matter of law.

What plaintiff, the original buyer under the contract, tries to do by this action is to pursue the remedy provided by section 69 of The Sales Act, supra, (69 PS §314), by rescission of the contract and offer to return the goods, and recovery of the price paid and resultant damages for loss due to a breach of warranty.

Section 49 of The Sales Act provides:

"But if, after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty, within a reasonable time after the buyer

knows or ought to know of such breach, the seller shall not be liable therefor."

The buyer could not examine the goods prior to accepting delivery, for they were shipped by carrier and he had to pay the sight draft before obtaining the shipping documents which would give him possession: The Sales Act, sec. 47. His acceptance of the goods, therefore, is qualified by his right to a reasonable time after acceptance to inspect and to seek his remedy for breach of warranty.

The real question here is whether or not the 28-day period lapsing between plaintiff's taking possession of the wine and his notification of the breach of warranty to defendant is unreasonable.

We apprehend that the principles of law expressed by the cases cited by defendant to support its contention are correct. The following quotation from Tinius Olsen Testing Mach. Co. v. Wolf Co., 297 Pa. 153, is illustrative:

"What is a reasonable time is what a reasonable, prudent man would do under given time and circumstances. It is a question of fact which will vary under different conditions, so much so that no fixed rule can be laid down. In the first instance, the question is one of fact and like all such questions should be for the jury. But in cases where but one inference can be drawn from the facts, the court may decide the question as a matter of law."

If, in the case at bar, plaintiff, as the buyer, had both the means and the authority to determine in the first instance whether the standard of quality of the wine it purchased was below the quality warranted, we have no doubt that a delay of 28 days in determining the quality and notifying the seller of a breach of warranty might be considered unreasonable and defeat plaintiff's claims.

But here we must consider a situation which is unique in trade relationships. The sale of alcoholic beverages in Pennsylvania is a State monopoly. No dealer may sell any alcoholic liquors (wines are included within the definition of alcoholic liquors) to anyone in Pennsylvania except to the Pennsylvania Liquor Control Board, which thereafter controls distribution to retailers or individual consumers. The Pennsylvania Liquor Control Board, in addition to its general powers to make such regulations as may be necessary for the administration of the Pennsylvania Liquor Control Act, has specific powers to make regulations regarding the purchase of liquor and its supply to the Pennsylvania Liquor Stores and to determine the classes, varieties and brands of liquor to be kept and sold in such stores. See Pennsylvania Liquor Control Act of November 29, 1933, P. L. (Special Session) 15, as amended, sec. 203, 47 PS §744-203. Necessary money from the State Stores Fund is appropriated to the Liquor Control Board for the purpose, inter alia, of testing liquor: Act of December 20, 1933, P. L. (Special Session) 89, sec. 1, as amended, 47 PS §744-907. Thus the Liquor Control Board has complete power to set its own standards of quality and is, therefore, the first agency authorized to determine whether products offered to it for purchase conform to its standards of quality. It follows that a producer or dealer who puts liquor or wine into trade channels designed to reach the Pennsylvania Liquor Control Board assumes the risk of meeting the standards of quality set by the board, the determination of which can only be made in each case by the board itself.

Therefore, the determination of quality according to the board's standard was not within control of this plaintiff as to the wine in question. There is no way suggested to us by the briefs or argument, nor have we been able to discover any from our examination of the

Pennsylvania Liquor Control Acts, by which the Liquor Control Board can be forced to determine the quality of any product to be purchased by it while in the hands of manufacturers or processors in advance of delivery to the board.

If the determination of quality according to required board standards is not within control of the plaintiff as a processor and is solely within control of the Liquor Control Board, it is obvious that the time within which plaintiff ought to have exercised his remedy for breach of warranty commences to run upon first notice to it from the Liquor Control Board of the failure of the product to meet the standard. Under this pleading, plaintiff acted without delay upon receipt of such notice. Hence, there can be no question as to the timely election of his remedy and presentation of his claim for breach of warranty.

We are of the opinion that the complaint clearly calls for a responsive answer and the demurrer must be overruled.

Now, February 7, 1949, the preliminary objections to the complaint are overruled; defendant to plead over within 20 days.